UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

TODD C. BANK, Individually and on Behalf of
All Others Similarly Situated,

*Plaintiff*,

-against-

ACCESSONE CONSUMER HEALTH, INC.,
and NATIONAL BENEFIT BUILDERS, INC.,

*Defendants*.

## CLASS-ACTION COMPLAINT

### INTRODUCTION

1.      This action arises out of telephone calls, made by, on behalf of, or with the authorization of AccessOne Consumer Health, Inc., and National Benefit Builders, Inc. The telephone calls were made by equipment that was capable of storing telephone numbers to be called and that was used, either alone or in conjunction with other equipment, to disseminate a prerecorded message to the telephone numbers that were called without the use of an operator.

2.      The legal claims arise under a federal statute and a New York statute: respectively, the Telephone Consumer Protection Act, 47 U.S.C. Section 227 ("TCPA"), and New York General Business Law ("GBL") Section 399-p.

3.      Plaintiff brings this action individually and as a class action on behalf of all persons to whose residential or cellular telephone number one or more telephone calls, described in paragraph "1" and further described below, were placed (the "Federal Class") during the period beginning four years prior to the commencement of this action until the date of such commencement (the "Federal Class Period").

4.      Plaintiff also brings this action individually and as a class action on behalf of all persons who received one or more telephone calls, described in paragraph "1" and further described below, on a New York telephone number, that is, a telephone number having an area code of 212, 315, 347, 516, 518, 585, 607, 632, 656, 716, 718, 845, 914, 917, or 929 (the "New York Class"), during the period beginning three years prior to the commencement of this action until the date of such commencement (the "New York Class Period").

5.      Plaintiff seeks, individually and on behalf of the other Federal Class Members, statutory damages, injunctive relief, and costs.

6.      Plaintiff seeks, individually and on behalf of the other New York Class Members, statutory damages, injunctive relief, legal fees, and costs.

## JURISDICTION AND VENUE

7.      This Court has jurisdiction over Plaintiff's federal-law claims under 28 U.S.C. Section 1331, and has jurisdiction over Plaintiff's state-law claims under 28 U.S.C. Sections 1332(d)(2)(A) and 1367(a).

8.      The matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs.

9.      Venue is proper in this District pursuant to 28 U.S.C. Section 1391(b)(2).

## PARTIES

10.      Plaintiff, Todd C. Bank ("Bank"), is a resident of the Eastern District of New York.

11.      Defendant, AccessOne Consumer Health, Inc. ("AccessOne"), is a corporation organized and existing under the laws of Florida, and has a principal place of business at 84 Villa Road, Greenville, South Carolina  29615.

12.      Defendant, National Benefit Builders, Inc. ("NBBI"), is a corporation organized and

existing under the laws of New Jersey, and has a principal place of business at 25B Hanover Road, Suite 150, Florham Park, New Jersey  07932.

## FACTS

13.    On or about March 10, 2016, Bank received, on his residential telephone line, a telephone call whose Caller ID was "386-213-8719; Interlachen, FL" ("Bank's First Telephone Call").

14.    Upon Bank's answering of Bank's First Telephone Call, a prerecorded voice stated as follows:

> Hi, we have the strongest dental-insurance program in the country. Let me repeat that. We have the strongest dental-insurance program in the country. Get covered on all major work within twenty-four hours. You heard right. Get covered within twenty-four hours on all major work. Save big-time now on root canal, extractions, teeth cleaning, and a whole lot more. Now, press one to speak to a live insurance agent [Bank pressed one]. Please press three to be removed from our list or, if you would like to hear [Bank pressed one]. Please press three to be removed from our list or, if you would like to hear about the nation's strongest dental insurance, press four. Again [Bank pressed one] press three.

15.    Because Bank's First Telephone Call began by playing a prerecorded message, Bank's First Telephone Call was a "Robocall."

16.    Bank, upon being given the options described in paragraph "14" (the "Keypad Options"), chose the first of the described options (the "First Keypad Option"), upon which he was transferred to a live person (the "Live Person").

17.    During the conversation that followed Bank's choosing of the First Keypad Option (the "Live Conversation"), the Live Person identified himself as an employee of Dental Shield USA.

18.    At all relevant times, the Liver Person was an employee of Dental Club America LLC ("Dental Club"), a Nevada limited-liability company that does business as Dental Shield USA.

3

19.    The Live Person attempted to sell, during the Live Conversation, a discount dental plan (the "Plan") called Aetna Dental Access, which is provided by Aetna Life Insurance Company ("Aetna"), a Connecticut Corporation.

20.    The Live Person told Bank that Bank's First Telephone Call was one of numerous calls, made to other recipients, that had played a prerecorded message that was the same as, or substantially similar to, the prerecorded message that was played when Bank answered Bank's First Telephone Call.

21.    On or about March 16, 2016, Bank received, on the voice mail of his residential telephone line, a telephone call whose Caller ID was "754-400-3178; Hollywood, FL" ("Bank's Second Telephone Call"; together, with Bank's First telephone Call, "Bank's Telephone Calls"). The following prerecorded voice stated, in the voice-mail message, as follows:

> Hi, we have the strongest dental-insurance program in the country. Let me repeat that. We have the strongest dental-insurance program in the country. Get covered on all major work within twenty-four hours. You heard right. Get covered within twenty-four hours on all major work. Save big-time now on root canal, extractions, teeth cleaning, and a whole lot more. Now, press one to speak to a live insurance agent or press two to be removed from our list. Let me repeat. Press one to speak to a live insurance agent or press two to be removed from our list.

22.    The prerecorded voice in each of Bank's Telephone Calls was the same, and the messages, to the extent that their scripts were identical, were exact replicas of one another.

23.    The Plan was what numerous state statutes call a "Discount Medical Plan," which such statutes define as a business arrangement or contract in which a person or entity, in exchange for consideration paid by members, offers access for its members to providers of medical or ancillary services and the right to receive discounts on those services provided under the business arrangement or contract from those providers.

4

24.     At all relevant times, AccessOne has been what numerous state statutes call a "Discount Medical Plan Organization," which such statutes define as an entity that provides a plan that enables access for the members of a Discount Medical Plan to providers of medical or ancillary services and the right to receive discounts on those services provided under the plan from those providers, and that contracts with providers, provider networks, or other Discount Medical Plan Organizations to offer access to such a plan and determines the charge to members of the plan.

25.     Numerous state statutes that pertain to Discount Medical Plans and Discount Medical Plan Organizations characterize dental services as ancillary services.

26.     At all relevant times, Aetna has authorized AccessOne to sell the Plan through distributors.

27.     At all relevant times, AccessOne has authorized NBBI to distribute the plan.

28.     At all relevant times, NBBI has authorized Dental Shield USA to sell the plan on the retail level.

29.     At all relevant times, Andrew D. Ross ("Ross") has owned and operated Dental Shield USA.

30.     In November, 2013, the Indiana Attorney General brought a civil action against Ross for making unlawful Robocalls. *See State of Indiana v. Andrew D. Ross*, No. 49D02-1311-MI-041479 (Marion Co. Super. Ct.) (the "Indiana Action").

31.     The final disposition of the Indiana Action was that Ross was held in contempt of court.

32.     Bank's Telephone Calls were made with equipment that was capable of storing telephone numbers to be called and that was used, either alone or in conjunction with other equipment, to disseminate a prerecorded message to the telephone numbers that were called without

the use of an operator (the "Automated Calls").

33. Bank's Telephone Calls did not state, at the beginning of the calls, the name of the person or on whose behalf the message was being transmitted.

34. Bank's Telephone Calls did not state, at the end of their message, the address and telephone number of the person on whose behalf the message was transmitted.

35. Bank's Telephone Calls were among thousands of telephone calls that, upon being answered by either a live person or an answering device, played a prerecord message that was the same as, or substantially similar to, the prerecorded messages that were played upon the answering of Bank's Telephone Calls (the "Class Robocalls").

36. Bank's Telephone Calls were made without prior express written consent.

37. The Class Telephone Calls were made without prior express written consent.

## APPLICABLE LAW

**A.    Regulation of Certain Calls to Residential and Cellular Telephone Numbers**

**(i)    Telephone Consumer Protection Act, 47 U.S.C. 227 ("TCPA")**

38. With respect to residential telephone lines, the TCPA states that it is "unlawful . . . to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party." 47 U.S.C. § 227(b)(1)(B).

39. With respect to telephone numbers assigned to a cellular telephone service, the TCPA states that it is "unlawful for any person . . . to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

40. Recipients of calls that are made in violation of 47 U.S.C. Section 227(b)(1) may

bring an action to recover, for each violation, the greater of the monetary loss caused by the violation or $500. *See* 47 U.S.C. Section 227(b)(3). If the court finds that a defendant willfully or knowingly violated Section 227(b), the court may increase the award by up to $1,000 per violation. *See id.*

### (ii)    Liability of Entities That Do Not Directly Place Illegal Calls

41.    As explained by the Federal Communications Commission ("FCC"), the TCPA and its regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Memorandum and Order, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995); *see also Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Request of State Farm Mutual Automobile Insurance Company for Clarification and Declaratory Ruling*, 20 FCC Rcd. 13664, 13667, ¶ 7 (2005) ("a company on whose behalf a telephone solicitation is made bears the responsibility for any violation of our telemarketing rules, and calls placed by a third party on behalf of that company are treated as if the company itself placed the call."); *In re Joint Pet. Filed by Dish Network*, 28 FCC Rcd. 6574 (2013) (with respect to violations of Section 227(b), a seller can be vicariously liable for unlawful calls placed by third parties). *Accord*, *Savanna Group., Inc. v. Trynex, Inc.*, No. 10-cv-7995, 2013 WL 4734004, at \*5 (N.D. Ill. Sept. 3, 2013); *Mey v. Monitronics Int'l, Inc.*, 11-cv-90, 2013 WL 4105430, at \*4-\*5 (N.D. W. Va. Aug. 14, 2013); *Thomas v. Taco Bell Corp.*, 879 F. Supp. 2d 1079, 1084-1085 (C.D. Cal. 2012).

### B.    New York General Business Law Section 399-p

42.    New York General Business Law Section 399-p(3)(a) states that, "[w]henever telephone calls are placed through the use of an automatic dialing-announcing device, such device shall do all of the following: state at the beginning of the call the nature of the call and the name of the person or on whose behalf the message is being transmitted and at the end of such message the

address, and telephone number of the person on whose behalf the message is transmitted, provided such disclosures are not otherwise prohibited or restricted by any federal, state or local law."

43.     Persons whose rights under GBL Section 399-p are violated are entitled, pursuant to GBL Section 399-p(9), to the greater of actual damages or $50 per violation, injunctive relief, and reasonable legal fees; and, in the event that a violation was committed willfully or knowingly, three times their actual damages, in a total amount of up to $1,000.

## FIRST CAUSE OF ACTION

44.     Plaintiff repeats and re-alleges, and incorporates herein, each and every allegation contained in paragraphs "1" through "37" inclusive of this Complaint as if fully set forth herein.

45.     The placement of the telephone calls described herein violated 47 U.S.C. Section 227(b)(1).

46.     Bank and Members of the Federal Class are entitled to statutory damages of $500 per violation pursuant to 47 U.S.C. Section 227(b)(3)(B).

47.     In the event that Defendants willfully or knowingly violated 47 U.S.C. Section 227(b)(1), Bank and the other members of the Federal Class are entitled to up an additional $1,000 per violation pursuant to 47 U.S.C. Sections 227(b)(3)(C).

48.     Bank and the other Members of the Federal Class are entitled to an Order, pursuant to 47 U.S.C. Section 227(b)(3)(A), enjoining Defendants from violating 47 U.S.C. Section 227(b)(1).

## SECOND CAUSE OF ACTION

49.     Bank repeats and re-alleges, and incorporates herein, each and every allegation contained in paragraphs "1" through "37" inclusive of this Complaint as if fully set forth herein.

50.     The placement of the telephone calls described herein violated GBL Section 399-p(3)(a).

51.     Bank and the other Members of the New York Class are entitled to statutory damages of $50 pursuant to GBL Section 399-p(9).

52.     Bank and the other Members of the New York Class are entitled to an Order, pursuant to GBL Section 399-p(9), enjoining Defendants from violating GBL Section 399-p(3)(a)

53.     Bank and the other Members of the New York Class are entitled to reasonable legal fees pursuant to GBL Section 399-p(9).

## CLASS ALLEGATIONS

54.     Bank brings this action as a Class Action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3) on behalf of all persons to whose residential or cellular telephone number Defendants, or third parties acting by, on behalf of, or with the authorization of Defendants, placed, directly or through third parties, one or more Class Robocalls (the "Federal Class"), during the period beginning four years prior to the commencement of this action until the date of such commencement (the "Federal Class Period").

55.     Bank brings this action as a Class Action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3) on behalf of all persons to whose residential or cellular telephone number Defendants, or third parties acting by, on behalf of, or with the authorization of Defendants, placed, directly or through third parties, one or more Class Robocalls on a New York telephone number, that is, a telephone number having an area code of 212, 315, 347, 516, 518, 585, 607, 632, 656, 716, 718, 845, 914, 917, or 929 (the "New York Class"), during the period beginning three years prior to the commencement of this action until the date of such commencement (the "New York Class Period").

56.     Bank believes that there are thousands of individuals whose claims are similar to Bank's claims, and, furthermore, that Bank's claims are typical of the claims of absent Class Members. Members of each Class have sustained damages arising out of Defendants' wrongful

conduct in the same manner in which Bank has sustained damages arising out of Defendants' unlawful conduct.

57.    Bank will fairly and adequately protect the interests of each Class. Bank has no interests that are antagonistic to, or in conflict with, the Members of the Classes. Indeed, Bank's interests are, for purposes of this litigation, coincident with the interests of the other Class Members.

58.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Because each of the Classes are so numerous that joinder of all Members is impracticable, and because the damages suffered by most of the individual Members of the Classes are too small to render prosecution of the claims asserted herein economically feasible on an individual basis, the expense and burden of individual litigation makes it impractical for Members of the Classes to adequately address the wrongs complained of herein. Bank knows of no impediments to the effective management of this action as a class action.

59.    Common questions of law and fact predominate over questions that affect only individual Federal Class Members. Among those questions are:

(i)    whether Defendants, or third parties acting by, on behalf of, or with the authorization of Defendants, placed, directly or through third parties, telephone calls using an artificial or prerecorded voice that delivered a message to residential or cellular telephone lines;

(ii)    whether Defendants violated Section 227(b)(1) of the TCPA;

(iii)    whether Defendants willfully or knowingly violated Section 227(b)(1) of the TCPA;

(iv)    whether the Members of the Federal Class are entitled to damages as a result of Defendants' violations of Section 227(b)(1) of the TCPA, and, if so, how much; and

(v)    whether the Members of the Federal Class are entitled to injunctive relief as a result of Defendants' violations of Section 227(b)(1) of the TCPA.

60.    Common questions of law and fact predominate over questions that affect only individual New York Class Members. Among those questions are:

(i)  whether Defendants, or third parties acting by, on behalf of, or with the authorization of Defendants, placed, directly or through third parties, telephone calls using equipment that was capable of storing telephone numbers to be called and that was used, either alone or in conjunction with other equipment, to disseminate a prerecorded message to the telephone numbers that were called without the use of an operator;

(ii)  whether Defendants violated GBL Section 399-p(3)(a);

(iii)  whether the Members of the New York Class are entitled to damages as a result of Defendants' violations of GBL Section 399-p(3)(a);

(iv)  whether the Members of the New York Class are entitled to injunctive relief as a result of Defendants' violations of GBL Section 399-p(3)(a); and

(v)  whether the Members of the New York Class are entitled to reasonable legal fees as a result of Defendants' violations of GBL Section 399-p(3)(a).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

(a)  Pursuant to 47 U.S.C. Section 227(b)(3)(B), statutory damages of $500 per violation of 47 U.S.C. Section 227(b)(1) for Plaintiff and the other Members of the Federal Class;

(b)  Pursuant to 47 U.S.C. Section 227(b)(3)(C), up to $1,000 of statutory damages for Plaintiff and the other Members of the Federal Class, in addition to the statutory damages prayed for in the aforementioned paragraph, if the Court finds that Defendants knowingly or willfully violated 47 U.S.C. Section 227(b)(1);

(c)  Pursuant to 47 U.S.C. Section 227(b)(3)(A), an order enjoining Defendants from violating 47 U.S.C. Section 227(b)(1);

(d)  Pursuant to New York General Business Law Section 399-p(9), damages of $50 per violation of New York General Business Law Section 399-p(3)(a) for Plaintiff and the other Members of the New York Class;

(e)  Pursuant to New York General Business Law Section 399-p(9), an order enjoining Defendant from violating New York General Business Law Section 399-p(3)(a); and

(f)      An award, to Plaintiff and the other Members of each Class, of the costs and

disbursements of this action, and reasonable legal fees, and such other and further relief as this Court

deems just and proper.

Dated: March 28, 2016

Respectfully submitted,

_   **s/ *Todd C. Bank***_____

TODD C. BANK, ATTORNEY AT LAW, P.C.
Todd C. Bank (TB-6825)
119-40 Union Turnpike, Fourth Floor
Kew Gardens, New York 11415
(718) 520-7125

*Counsel to Plaintiff*